IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ERIC WANNER,

        Plaintiff,                      Case No.

v.                                            Judge

UNDER ARMOUR, INC.,

                                                  JURY DEMAND

        Defendant.

_____/

## COMPLAINT

Mr. Wanner, who was employed as Senior Director of Nashville Distribution Operations, was terminated on August 28, 2017, by Defendant Under Armour, Inc., less than a month after he disclosed a disability as defined by the ADAAA, requested time off to attend physician's appointments and to adjust to new medication. Prior to his termination, Mr. Wanner was encouraged by his manager to take a few weeks off to "get his head straight." Mr. Wanner requested FMLA leave documents from Human Resources, but the time provided to submit the documentation had not elapsed before his termination. Accordingly, Mr. Wanner files the instant Complaint for violations of the FMLA, the ADA and the TDA.

## PARTIES

1. Plaintiff is a citizen and resident of Wilson County, Tennessee, and a former employee of Defendant. Plaintiff worked at the Nashville Distribution Center in Mt. Juliet, Tennessee.

2. Defendant Under Armour, Inc., is a Maryland corporation that maintains offices in Nashville and is licensed to transact business in Tennessee. Its registered agent for service of

1

process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37929-5546. At all material times, Defendant has been an employer as defined by the Family and Medical Leave Act "FMLA," the Americans with Disabilities Act As Amended ("ADAAA") and the Tennessee Disability Act.

3. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2015 and/or 2016 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4. At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110, under the Americans with Disabilities Act as Amended ("ADAAA"), and the Tennessee Disabilities Act ("TDA).

## JURISDICTION AND VENUE

5. This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I) and the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count II), and the Tennessee Disabilities Act (TDA).

6. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

7. Plaintiff complied with all conditions precedent to the filing of his claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the Notice of Right to Sue.

## FACTS

8. Plaintiff was hired on February 23, 2015 as Senior Director of Southeast Distribution Operations at the Distribution Center in Mt. Juliet, Tennessee. Plaintiff was the highest ranking distribution official outside of the headquarters in Baltimore, Maryland. Plaintiff had full responsibilities for all aspects of distribution in the southeast.

9. Plaintiff performed his job duties well and in February 2017 received a performance evaluation rating him as "commendable." On his 2016 performance evaluation he received a overall performance rating of "Meets UA's High Expectations."

10. On July 31, 2017, Plaintiff received his mid-year evaluation and was rated "Meets UAs High Expectations."

11. On or around July 28, 2017, Plaintiff was divorced from a long-term marriage.

12. On August 2, 2017, Plaintiff got upset in a meeting with his subordinate leadership team and raised his voice and used profanity. Within days he apologized to the team. However, while the outburst was unusual for Plaintiff, it was not unusual for senior leadership to have intense meetings involving the same sort of behavior.

13. On or around August 8, 2017, Plaintiff advised Nancy Tucker, Human Resources Manager, of a mental health diagnosis and that that he was contemplating taking a leave of absence.

14. The next day, on August 9, 2017, his direct supervisor, Billy Werner, called Plaintiff and told him to take a few weeks off to "get your head straight." Plaintiff had previously disclosed to Mr. Werner, his local HR and corporate HR that he had been seeing a therapist since December 2016 due to the intensity of his ongoing divorce proceedings.

3

15. On August 16, 2017, Plaintiff contacted Nancy Tucker, Sr. Director of North America HR, and explained his diagnosis and that he had a follow up with his physician scheduled for August 17, 2017. He requested FMLA paperwork. Ms. Tucker directed him to contact Defendant's leave coordinator, CCA.

16. On August 17, 2017, Plaintiff's doctor recommended that he take off until September 5, 2017, to titrate on new medication.

17. Plaintiff contacted CCA and requested FMLA paperwork and had fifteen days from receipt of the paperwork to turn in a medical certification for leave.

18. Unbeknownst to him, Defendant had initiated an investigation of him during his absence based on an alleged complaint by a subordinate.

19. On August 28, 2017, Plaintiff received a phone call terminating his employment prior to the completion of his leave. Plaintiff was given no reason for his termination other than "due to business reasons."

20. After this phone call, Plaintiff followed up with Ms. Tucker via email on August 29, 2017, to ask whether Defendant would be offering a severance package, as was usual for management at his level.

21. To his great surprise, Ms. Tucker responded that his performance was not meeting expectations and that they had considered his leave a "paid, 2 week suspension" because he they had "significant concerns around his ability to effectively lead the Nashville DH, in particular regarding operations, meeting financial targets, and safety."

22. None of these alleged concerns were ever documented and provided to Plaintiff. In fact, none of these alleged concerns were mentioned until after Plaintiff disclosed his disability and asked for time off as a reasonable accommodation and requested FMLA paperwork.

23. Plaintiff replied via email on September 8, 2017, confirming that he was on a "medical/stress leave of absence" that he had discussed with Tucker before he took the leave. Nonetheless, Under Armour terminated Mr. Wanner's employment while he was on medical leave.

24. Plaintiff filed an EEOC Charge on November 1, 2017 and subsequently received his Right to Sue letter.

**Count I**
**Violation of FMLA**

25. Plaintiff restates and incorporates herein the foregoing paragraphs.

26. Defendant interfered with Plaintiff's right to take leave under FMLA.

27. Defendant retaliated against Plaintiff for taking leave pursuant to FMLA.

28. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

29. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

30. Plaintiff was entitled to receive FMLA leave to care for his serious health conditions.

31. Defendant subjected Plaintiff to disparate terms and conditions of employment after he requested FMLA, including but not limited to, interfering with his rights to take FMLA by terminating him during his leave, and retaliating against him for exercising his rights under the FMLA.

32. Plaintiff was entitled to receive FMLA leave on a continuous basis.

33. Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

34. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

5

35. Defendant's conduct harmed and caused damage to Plaintiff.

36. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## Count II
## Violation of ADA/ADAAA and TDA- Disability Discrimination/Retaliation

37. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

38. Plaintiff was a qualified individual with a disability.

39. Defendant discriminated and retaliated against Plaintiff on the basis of his disability in violation of the ADA and TDA that culminated in his termination.

40. Plaintiff could perform the essential functions of his job with or without reasonable accommodation. Plaintiff made a request for reasonable accommodation, including, but not limited to, a request for medical leave.

41. Plaintiff was terminated because of his disability and/or in retaliation for his requests for reasonable accommodation.

42. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

43. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages;

6. Liquidated damages under the FMLA;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled under the ADA, TDA and FMLA.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Paige M. Lyle BPR # 032959
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
paige@collinshunter.com

*Attorneys for Plaintiff*